IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Ellen F. Cartee, | ) | C/A No. 3:08-4132-JFA-PJG |
| Plaintiff, | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| Wilbur Smith Associates, Inc., | ) | |
| Defendant. | ) | |

The plaintiff, Ellen Cartee ("Cartee"), filed this employment discrimination action against her former employer, Wilbur Smith Associates ("Wilbur Smith"). Remaining before the court are Cartee's claims of age discrimination and retaliation pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on Wilbur Smith's motion for summary judgment regarding those claims. (ECF No. 42.) Having carefully reviewed the parties' submissions, the court concludes that Wilbur Smith's motion should be granted.

## BACKGROUND

Viewed in the light most favorable to Cartee, the following facts appear pertinent to resolution of the defendant's motion. Cartee was hired in 2001 at the age of forty-three as a graphic designer for Wilbur Smith, an engineering firm. In 2006, Jamie Powell, then aged thirty-one, became the supervisor of the newly restructured Carolinas Marketing and Proposal Services ("MAPS") Team, of which Cartee was a member. Upon his promotion, Powell hired an additional

graphic designer and two writers, all of whom were below the age of thirty. In December 2006, Cartee, then in her late forties, began receiving what she perceived to be unjustifiedly negative performance evaluations from Powell in spite of her demonstrated artistic performance and generally positive evaluations under her previous supervisor.[1] Powell noted that Cartee produced "inconsistent work quality" and took "longer to complete tasks than [the] position require[d] in a deadline driven environment." (Annual Review, Dec. 15, 2006, ECF No. 44-1 at 24.) Cartee complained to management. Specifically, in response to her first evaluation from Powell, Cartee noted that "as the oldest, I have been called the 'matriarch.' " (Response to Annual Review, Dec. 19, 2006, ECF No. 44-2 at 26.) Cartee does not attribute this statement, however, to Powell or any other member of management.

Despite Cartee's efforts to improve the deficiencies noted by Powell, she continued to receive criticism. In October of 2007, she received a final warning giving her thirty days to improve her performance and attendance. In December, Wilbur Smith terminated Cartee's employment on the stated ground of excessive tardiness and low productivity. Cartee was then forty-nine. Cartee was replaced by a younger woman.

---

[1] Cartee does not appear to dispute Wilbur Smith's evidence that even Cartee's previous supervisor—with whom Cartee admittedly had an excellent relationship—had observed that Cartee was often tardy and identified other areas of concern regarding Cartee's performance. (See Def.'s Mem. Supp. Mot. Summ. J at 8-9, ECF No. 42-1 at 8-9; 2003 Annual Review, ECF No. 42-4 at 10-12; 2004 Annual Review, ECF No. 42-4 at 16-21; 2005 Annual Review, ECF No. 42-4 at 22-25.)

PJG

# DISCUSSION

A.  **Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no *genuine* issue of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.     Proving Discrimination**

A plaintiff asserting a claim of unlawful employment discrimination may proceed through two avenues of proof.  See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004) (*en banc*).  "A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." Gross v. FBL Financial Services, Inc., 129 S. Ct. 2343, 2351 (2009).  Such proof includes " 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.' " Hill, 354 F.3d at 284-85 (quoting Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995)).

Alternatively, when direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework.[2]  Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action.  Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir. 2010) (Title VII).  The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142.  Once a defendant meets this burden by producing affidavits

---

[2] The court observes that the United States Supreme Court has expressly not addressed whether the McDonnell Douglas framework applies to an ADEA claim.  Gross, 129 S. Ct. at 2349 n.2.  Nonetheless, the United States Court of Appeals for the Fourth Circuit has continued to apply it in that context and the parties have applied it in their arguments.  See Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 513 (4th Cir. 2006) (cited in Jyachosky v. Winter, 343 Fed. Appx. 871, 876 (4th Cir. Sept. 14, 2009) (*per curiam*) (unpublished)); Mereish v. Walker, 359 F.3d 330, 334 (4th Cir. 2004) (cited in Jones v. Sternheimer Bros., Inc., No. 09-2375, 2010 WL 1650035 (4th Cir. Apr. 22, 2010) (*per curiam*) (unpublished)).

*PJG*

or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. at 142-43 (internal citations and quotations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence

*PJG*

that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 301 F.3d at 294-95.

**C.     Cartee's Claims**

**1.      Age Discrimination**

Cartee has produced insufficient direct evidence of age discrimination to survive summary judgment. As noted above, the United States Supreme Court has held that to prevail on an ADEA claim, a plaintiff must present sufficient evidence from which a reasonable jury could find that age was the "but for" cause of the adverse employment action. Gross, 129 S. Ct. at 2351. Thus, Cartee must show that but for her age, she would not have been discharged. See id. Generally, stray or isolated comments such as the ones relied upon by Cartee are insufficient evidence of discrimination; rather, the plaintiff must show that they were related to the challenged employment action. See Brinkley v. Harbour Recreation Club, 180 F.3d 598, 608 (4th Cir. 1999) ("[T]o prove discriminatory animus, the derogatory remark cannot be stray or isolated and unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of discrimination.") (internal quotation marks and alterations omitted), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). Here, Cartee has presented no admissible evidence

*PJG*

connecting any discriminatory remarks to the decision to terminate her.³ In the absence of such evidence, the stray statements upon which Cartee relies are insufficient to warrant a finding by a reasonable jury that but for her age, Cartee would have kept her position. See Gross, 129 S. Ct. at 2351; see also O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542 (4th Cir. 1995) (holding that a comment that the plaintiff was too old to play eighteen holes of golf for five days was insufficient to establish age discrimination), rev'd on other grounds, 517 U.S. 308 (1996); Equal Employment Opportunity Comm'n v. Clay Printing Co., 955 F.2d 936 (4th Cir. 1992) (holding that a comment that the company needed "young blood" and wanted to attract younger people was insufficient to establish age discrimination).

Nor has Cartee presented sufficient circumstantial evidence for her claims to proceed beyond the summary judgment stage. To establish a *prima facie* case of disparate treatment under the ADEA, a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) at the time of the adverse employment action, she was performing her job at the level that met the employer's legitimate expectations; and (4) she was discharged under circumstances that raise a reasonable inference of unlawful discrimination.⁴ See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310-12 (1996) (discussing the *prima facie* case under

---

³ Although Cartee relies heavily on hearsay statements from a co-worker, Cara Johnson, regarding Powell's intent to force Cartee out and his alleged comment that "you can't teach an old dog new tricks," Cartee has not presented any testimony from Johnson—or any other evidence— that complies with the requirements of Rule 56. (See generally Def.'s Reply Mem. Supp. Mot. Summ. J. at 2-6, ECF No. 45 at 2-6); Fed. R. Civ. P. 56; Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993). The unsupported allegations in Cartee's Complaint to that effect are insufficient to withstand summary judgment.

⁴ For purposes of this motion, Wilbur Smith concedes that Cartee can meet the first and second elements. (Def.'s Mem. Supp. Mot. Summ. J. at 21, ECF No. 42-1 at 21.)



the ADEA); see also Warch v. Ohio Cas. Ins. Co., 435 F.3d 510 (4th Cir. 2006).  Supreme Court and Fourth Circuit precedents analyzing the ADEA and Title VII show that an inference of unlawful discrimination may be demonstrated in a variety of ways, one of which is that the position was filled with someone outside the protected class.  O'Connor, 517 U.S. at 310-12; Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 285 (4th Cir. 2004) (*en banc*).

On the record presented, Cartee cannot establish the third element because she cannot show that she was meeting Wilbur Smith's legitimate expectations at the time of her termination.  The relevant time to evaluate the an employee's performance is at the time of the adverse action.  See, e.g, Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir. 2005) (Title VII) (stating that the third factor of a *prima facie* case includes that "she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action").  Moreover, in determining satisfactory job performance, it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.  King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003) (Title VII) (stating that plaintiff's own testimony of satisfactory job performance cannot establish a genuine issue as to whether he was meeting his employer's expectations in a race discrimination case) (citing Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996)).  An employer's expectations of its employees are "legitimate" when they are honestly held; whether the employee agrees with those expectations is not the test.  Thornley v. Penton Pub., Inc., 104 F.3d 26, 30 (2d Cir. 1997) (stating that "a plaintiff must satisfy the employer's honestly-held expectations").[5]  In this context, the term "legitimate" means that expectations cannot be a "sham designed to hide the

---

[5] Some courts within the Second Circuit have recognized that Thornley's holding is limited to cases where meeting an employer's legitimate expectations is a requirement of the applicable *prima facie* case.



employer's discriminatory purpose." Warch, 435 F.3d at 518. As long as the requirements imposed are *bona fide* expectations, it is not the court's province to determine whether an employer demands too much of its workers. Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir. 1997) (Posner, J.).

The record shows here that Cartee's previous supervisor also noted that Cartee was having trouble with tardiness as early as 2003. In 2004 and 2005, her previous supervisor noted performance issues, and the record shows that after Powell became Cartee's supervisor in 2006, he was not the only MAPS team member who observed issues with Cartee's productivity and timeliness in delivering work assignments. (Jaynes Aff. ¶ 7, ECF No. 42-5 at 3.) Accordingly, no reasonable jury could find that Wilbur Smith's expectations that Cartee come to work on time and complete assignments promptly were not legitimate, but rather were a sham to disguise Powell's alleged age discrimination.

Moreover, even if Cartee could establish all of the required elements for a *prima facie* case, she has not presented sufficient evidence that Wilbur Smith's proffered legitimate, nondiscriminatory reason was pretextual. Cartee does not dispute the performance problems identified by Powell; she merely argues that he was overly critical and failed to recognize her improvement. She offers nothing other than her unsupported belief for this argument. See King, at 328 F.3d at 149; Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir. 2000). Moreover, the fact that the ultimate decision makers in this case were older than Cartee mitigates any inference of age discrimination. See, e.g., Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1471 (11th Cir. 1991) (ADEA) (stating that it is difficult for a plaintiff to establish discrimination when the allegedly discriminatory decision makers are within the same protected class as the plaintiff); Demesme v. Montgomery Cnty. Gov't, 63 F.

Supp. 2d 678, 683 (D. Md. 1999) (Title VII) ("The fact that the decision makers were of the same protected class [as the plaintiff] suggests no discriminatory motivation."), aff'd per curiam, 208 F.3d 208 (4th Cir. 2000); see also Coggins v. Gov't of District of Columbia, 173 F.3d 424, 1999 WL 94655 at *4 (4th Cir. 1999) (Table) ("The fact that both Krull and Gibbons, first and third in [Plaintiff's] chain-of-command, are both Caucasian makes any anti-Caucasian bias unlikely."); but see Kadas v. MCI Systemhouse Corp., 255 F.3d 359 (7th Cir. 2001) (declining to follow in the age discrimination context case law applying the inference of nondiscrimination based on the fact that the decision maker is in the same protected class as the plaintiff).

Similarly, Cartee has failed to support her contention that Powell—rather than his supervisor Kim Jaynes and human resources officer Tina Comalander—was the actual decision maker regarding Cartee's termination. Under the ADEA, the definition of "employer" includes, in pertinent part, "a person engaged in an industry affecting commerce" and "any agent of such a person." 29 U.S.C. § 630(b). The Fourth Circuit takes a strict view regarding the determination as to who can be considered an agent of an employer for discriminatory liability purposes. See, e.g., Ricci v. DeStefano, 129 S. Ct. 2658, 2688-89 (2009) (Alito, J., concurring) (discussing various circuits' approaches to the question of when an employer may be held liable based on the discriminatory intent of subordinate employees who influence but do not make the ultimate employment decision and noting that the Fourth Circuit has the "least employee-friendly standard"); Hill, 354 F.3d at 291 (discussing the determination of who is a decision maker for purposes of liability under discrimination statutes). In defining the parameters of when an employer may be held liable for the discriminatory animus demonstrated by an employee who is *subordinate* to the ultimate decision maker, the Hill Court found that the ADEA does not limit the discrimination inquiry to the actions

*PJG*

or statements of "formal decisionmakers" for the employer. Id. at 290. Such an approach, the Hill Court noted, would allow an employer to insulate itself from liability "simply by hiding behind the blind approvals, albeit non-biased, of formal decisionmakers." Id. at 290. Nonetheless, "to survive summary judgment, an aggrieved employee who rests a discrimination claim under Title VII or the ADEA upon the discriminatory motivations of a subordinate employee must come forward with sufficient evidence that the subordinate employee possessed such authority as to be viewed as the one principally responsible for the decision or the actual decisionmaker for the employer." Id. at 291.

In this case, even viewing the facts in the light most favorable to Cartee and assuming that Powell was motivated by unlawful discriminatory animus, there is insufficient evidence to support a determination that the ultimate decision makers—Jaynes and Comalander—were so influenced by Powell's evaluation of Cartee that he should be considered the actual decision maker. Moreover, Cartee presents no evidence that Jaynes and Comalander blindly accepted or merely "rubber-stamped" Powell's recommendation. Comalander, for example, personally participated in meetings with Powell and Cartee regarding Cartee's performance issues. Similarly, Jaynes—who ranked above Powell—had received complaints about Cartee's performance from other members of the MAPS team and had personally experienced Cartee's untimely submission of work. (Jaynes Aff. ¶¶ 5-8, ECF No. 42-5 at 3); see Hill, 354 F.3d at 289-90 (discussing the "cat's paw" or "rubber stamp" theory of liability but "declin[ing] to endorse a construction of the discrimination statutes that would allow a biased subordinate who has no supervisory or disciplinary authority and who does not make the final or formal employment decision to become a decisionmaker simply because he had

Page 11 of 15

PJG

a substantial influence on the ultimate decision or because he has played a role, even a significant one, in the adverse employment decision").

### 2. Retaliation

Cartee's retaliation claim also fails. The ADEA provides that an employer may not discriminate against an employee who has opposed unlawful discrimination or who has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under the ADEA. See 29 U.S.C.A. § 623(d). To establish a *prima facie* case of retaliation under the ADEA, a plaintiff must show: (1) that she engaged in protected activity; (2) that an adverse employment action was taken against her; and (3) that there was a causal link between the protected activity and the adverse employment action. See Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) (ADEA). "Protected activity" under the statute falls into one of two categories: opposition or participation.[6] Crawford v. Metro. Gov't of Nashville & Davidson County, 129 S. Ct. 846, 850 (2009); Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 257 (4th Cir. 1998) (both analyzing a similar retaliation provision under Title VII). "Oppose" means "to resist or antagonize . . . ; to contend against; to confront; resist; withstand." Crawford, 129 S. Ct. at 850 (quoting Webster's New International Dictionary 1710 (2d ed. 1958)). An employee need not instigate or initiate a complaint to be covered by the opposition clause. Id. at 851; see also Laughlin, 149 F.3d at 259 ("To qualify as opposition activity an employee need not engage in the formal process of adjudicating a discrimination claim."). To establish that she engaged in protected opposition

---

[6] Participation, which receives broader protection than opposition conduct, includes: "(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing" under the ADEA. See Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998) (Title VII). Cartee does not assert retaliation based upon such activity.



activity, a plaintiff must show that she opposed an unlawful employment practice which she reasonably believed had occurred or was occurring. See Peters v. Jenney, 327 F.3d 307, 320 (4th Cir. 2003).

Here, even assuming that Cartee's complaints to management constituted protected opposition activity, Cartee cannot demonstrate a causal connection between her complaints about Powell and her termination. Causey, 162 F.3d at 803-04. To do so, Cartee must show that prior to taking the adverse employment action, Wilbur Smith was aware that she was engaging in protected activity. See id; Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) (Title VII). Here, other than her comment in her response to her 2006 evaluation that some unidentified individual referred to her as a "matriarch"—a remark that Cartee admits was not made by Powell—Cartee has presented no evidence that Wilbur Smith knew or had reason to know that what Cartee was opposing by way of her complaints about Powell was an unlawful employment practice—specifically, age discrimination. Rather, the record shows that in her communications with Wilbur Smith management about Powell, Cartee complained about his "management style" and his rude and militaristic behavior, but never expressed prior to her termination that she attributed Powell's hostility to her age. (Comalander Aff. ¶¶ 8-9, 11, 15, 17, 19, ECF No. 42-4 at 2-7; Cartee letter to Houston, ECF No. 44-1 at 9-11.) Accordingly, Cartee cannot connect any protected activity to her termination. Moreover, even if she could establish the requisite causal link for a *prima facie* case of retaliation, she has failed, for the same reasons discussed above with regard to her discrimination claim, to present evidence that Wilbur Smith's stated reason for her termination was a pretext for unlawful retaliation based on Cartee's opposition to Powell's alleged unlawful age discrimination.

## RECOMMENDATION

Cartee has failed to present sufficient evidence—direct or circumstantial—from which a reasonable jury could find that but for her age, she would not have been terminated. She has failed to establish a *prima facie* case of either age discrimination or retaliation and, even if she had, she has failed to show that Wilbur Smith's legitimate, nondiscriminatory reason for terminating her was a pretext for age discrimination or retaliation. Accordingly, the court recommends that the defendant's motion for summary judgment (ECF No. 42) be granted.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 6, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).